USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/20/2019____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIELLE FORTUNE,

                Petitioner,

-against-

THOMAS DECKER, as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement, JAMES MCHENRY, as Director of the Executive Office for Immigration Review, KEVIN K. MCALEENAN, as Acting Secretary, U.S. Department of Homeland Security, WILLIAM BARR, as Attorney General, U.S. Department of Justice,

                Respondents.

19 Civ. 9740 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Marielle Fortune, has been detained by U.S. Immigration and Customs Enforcement ("ICE") since March 7, 2019. She seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents, Thomas Decker, ICE Field Office Director for the New York City Field Office, James McHenry, Director of the Executive Office of Immigration Review, Kevin McAleenan, Acting Secretary of Homeland Security, and William Barr, United States Attorney General, to afford her an individualized bond hearing. For the reasons stated below, Fortune's petition is GRANTED.

## BACKGROUND

    Fortune is a 37-year-old resident of New York, who has lived in the United States for nearly 25 years. Petition for Writ of Habeas Corpus ("Petition") ¶ 18, ECF No. 1. She has two U.S. citizen children, ages 7 and 18, whom she has raised as a single mother. *Id.* ¶¶ 18, 22. Fortune was born in Port Au Prince, Haiti. *Id.* She has been employed in the food service industry as a server and bartender "for nearly her whole life." *Id.* ¶ 22.

    At the age of 12, Fortune left Haiti and moved in to her grandmother's home in Orlando,

Florida. *Id.* ¶¶ 18–19. Members of Fortune's family abused and mistreated her in both Haiti and the United States. In Haiti, a relative sexually assaulted her, *id.* ¶ 18, and in the United States, family members treated her as a servant and forced her to perform domestic duties beginning at the age of 12 and lasting until she managed to leave the family at age 18, *id.* ¶ 21.

Fortune was convicted of the following crimes: forgery and theft by credit card fraud (Florida, 2001); petit theft (Florida, 2006); identity fraud, forgery in the first degree, and giving false information to a law enforcement officer (Georgia, 2008); trafficking in marijuana, giving false information to a law enforcement officer, and driving with a suspended license (Georgia, 2009); driving under the influence (Georgia, 2012); and driving while intoxicated (New York, 2015 and 2017). Samuel Decl. ¶¶ 7–13, ECF No. 10. For these crimes, Fortune has served a total of about 45 days in jail, in addition to various terms of probation. Petition ¶ 23.

On March 7, 2019, ICE arrested Fortune, detained her at the Hudson County Correctional Center ("HCCC"), and initiated removal proceedings. *Id.* ¶ 24. On that date, ICE served Fortune with a Notice to Appear ("NTA"), the charging document used to commence removal proceedings, charging her as removable pursuant to (1) Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled; (2) INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), as an alien who has been convicted of violating a law or regulation relating to a controlled substance; and (3) INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien who has been convicted of a crime involving moral turpitude. Samuel Decl. ¶ 14. On March 11, 2019, ICE served the NTA on the Varick Immigration Court in Manhattan. *Id.* ¶ 15. On March 21, 2019, Fortune appeared via video teleconference ("VTC") for an initial master calendar hearing

2

before Immigration Judge Lauren Farber.[1]  *Id.* ¶ 16.

After learning that her biological father might be a U.S. citizen, Fortune began investigating her possible derivative citizenship status.  Petition ¶ 27.  Fortune believed that her father was Denis Fortune, who was naturalized as a U.S. citizen in 1997.  *Id.*  At a June 7, 2019 hearing, Fortune's attorney submitted a copy of an authenticated birth certificate from the National Archive in Haiti, naming Denis Fortune as her father.  *Id.*  On July 18, 2019, ICE challenged the authenticity of the birth certificate, and submitted another birth certificate stating that Wilfrid Fortune, Denis Fortune's brother, was Petitioner's father.  *Id.* ¶ 34.

At an August 16, 2019 hearing, Judge Farber encouraged Fortune to obtain a paternity test.  Samuel Decl. ¶ 33.  On September 13, 2019, Fortune's counsel informed Judge Farber that Fortune would undergo DNA testing to determine who her biological father was.  *Id.*  On October 3, 2019, Fortune informed the immigration court that she was still in the process of securing a DNA test but was having difficulty doing so because of her detention at HCCC.  *Id.* ¶ 37.  Judge Farber noted that if there were any issues having the test performed at the detention facility, she would consider producing Fortune to have testing performed at the courthouse.  Samuel Decl. ¶ 35.

On October 22, 2019, Fortune informed Judge Farber that the paternity test had been performed but that the results were not yet known.  *Id.* ¶ 37.  On October 28, 2019, Fortune advised Judge Farber that the paternity test concluded that Denis Fortune is not Petitioner's father.  *Id.* ¶ 38.  Judge Farber sustained the allegations in the NTA and granted Fortune "an adjournment to prepare any applications for relief from removal."  *Id.*  Fortune intends to seek

---

[1] Fortune appeared before Judge Farber by VTC on March 21, June 7, July 18, August 16, and September 13, 2019; she appeared in person on October 3, October 22, and October 28, 2019.  On each date, Fortune's counsel appeared in person.

relief from removal in the form of an application for Deferral of Removal under the Convention Against Torture, as well as an application for T nonimmigrant status, a visa provided to victims of human trafficking. Pet. Reply at 5, ECF No. 14.

## DISCUSSION

I. <u>Statutory Background</u>

Section 236(c) of the INA, 8 U.S.C. § 1226, regulates the detention of aliens who are facing removal due to past criminal convictions. Generally, immigration detention is authorized by § 1226(a), which provides for individualized review of detention decisions. Aliens detained pursuant to § 1226(a) may be released on bond or conditional parole while their immigration case is resolved.

The mandatory detention provision, § 1226(c), carves out an exception to the general framework set forth in § 1226(a). *See id.* § 1226(a) ("Except as provided in subsection (c) . . . ."). Under this exception, aliens who have committed one or more predicate crimes are to be detained by the Attorney General "when . . . released" from criminal custody. *Id.* § 1226(c)(1). In contrast to § 1226(a), immigration authorities do not have the option to provide aliens detained under § 1226(c) with a bond hearing. Instead, aliens may be released only for limited purposes, none of which are relevant here. *See id.* § 1226(c)(2). In full, § 1226(c)(1) provides:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section

4

> 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> *when the alien is released,* without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).

Respondents contend that Fortune is subject to mandatory detention under INA section 236(c), 8 U.S.C. § 1226(c). Resp. Mem. at 5, ECF No. 11.

## II. Application

Fortune advances two arguments in support of her petition. First, she contends that her continued detention without a bond hearing violates due process. Second, she argues that due process requires that all noncitizens detained under § 1226(c) receive an individualized bond hearing when their detention exceeds six months. Fortune contends that she is entitled to a bond hearing where Respondents bear the burden of proof, by clear and convincing evidence, that she is a flight risk or danger to the community. Pet. Reply at 1, 9, 12.

### A. Due Process

Fortune argues that her continued detention without a bond hearing violates due process on the following grounds: (1) the 10-year gap between the conviction triggering her mandatory detention and her arrest by ICE; (2) the nonviolent nature of her criminal record; (3) her 25 years' residing in the United States and her status as mother of two U.S. children, ages 7 and 18; (4) that she continues to put forth defenses to removal before the immigration court; and (5) the length of her detention, which has reached 258 days as of November 20, 2019, which is more

5

than five times the number of days (45) that she has served in jail for all her criminal convictions combined. Pet. Reply at 1. With respect to mandatory detention, Fortune contends that the convictions that trigger her § 1226(c) detention are her 2009 marijuana offense and her 2001 fraud offense, *see* ECF 1-1, Notice to Appear, and that she would be entitled to a discretionary bond hearing but for these offenses, Pet. Reply at 2. Fortune further argues that mandatory detention, "based on offenses occurring ten years ago, bears no rational relationship to the justifications for the INA's mandatory detention scheme." *Id.* at 2–3.

Respondents counter that mandatory detention of a criminal alien under § 1226(c) during removal proceedings continues to serve the "'purported immigration purpose'" of the statute, namely, ensuring the alien's appearance and protecting the community. Resp. Mem. at 20 (quoting *Demore v. Kim*, 538 U.S. 510, 527 (2003)). They contend that the detention mandate does not cease to be justified until the underlying removal proceedings are complete. *Id.* at 20. Respondents further argue that detention under § 1226(c) "does not cease to be justified when a criminal alien makes choices during the proceedings that necessarily extend the time needed to resolve her case—and thereby prolong the detention that Congress found to be a necessary aspect of those proceedings." Resp. Mem. at 21. In other words, Respondents argue that the length of Fortune's detention is attributable to her investigation of her derivative citizenship claim and her planned applications for additional defenses against deportation. *See* Resp. Mem. at 25–30.

Fortune's detention raises serious constitutional concerns. First, although the mandatory detention provision calls for the Attorney General to detain aliens who have committed one or more predicate crimes "when . . . released" from criminal custody, § 1226(c)(1), ICE detained Fortune 10 years after she was released from custody in connection with her 2009 marijuana conviction and 18 years after being released with respect to her 2001 fraud offense. Moreover,

6

prior to her arrest by ICE, she had spent only 45 days in jail total for her previous convictions compared to the 258 days she has spent in detention since her arrest by ICE. Fortune, a single mother with two U.S. citizen children, has every incentive to continue to pursue her available defenses to deportation in order to remain in the United States where she has lived for the past 25 years. These factors, taken together, especially the 10-year-gap between the conviction triggering her mandatory detention and her arrest by ICE, raise grave due process concerns.

Second, Respondents' reliance on *Demore* is unavailing. Whereas *Demore* involved a lawful permanent resident ("LPR") who brought a facial constitutional challenge to § 1226(c), *Demore*, 538 U.S. at 510, Fortune brings an as-applied challenge, arguing that the statute is unconstitutional as applied to her based on the specific circumstances surrounding her detention, Petition ¶¶ 60–69. The District Court in *Demore* found the statute facially unconstitutional and the Ninth Circuit narrowed that holding as applicable only to LPRs. *Demore*, 538 U.S. at 510. The Supreme Court reversed the District Court's holding that § 1226(c) was facially unconstitutional, holding that Congress "may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Id.* at 513. The "brief period" envisioned by the Court, however, "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. By comparison, Fortune has been detained for more than eight months.

Third, in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court noted "that Congress previously doubted the constitutionality of detention for more than six months." Several courts, sharing that same doubt, have held that the continued detention of non-citizens without an individualized bond hearing in circumstances similar to Fortune's violates the Due Process Clause of the U.S. Constitution. *See, e.g.*, *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL

2357266, at *10 (S.D.N.Y. May 23, 2018) ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." (citation omitted)); *Martinez-Done v. McConnell*, 56 F. Supp. 3d 535, 548 (S.D.N.Y. 2014) ("[T]he government's construction of section 236(c) would confer limitless authority on the Attorney General to pluck immigrants from their families and communities with no hope of release pending removal—even decades after criminal confinement."); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 550 (S.D.N.Y. 2014) ("[C]ontinued detention without a bond hearing is inconsistent with the due process clause of the Constitution."); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 459 (S.D.N.Y. 2010) ("For Monestime, who has been held for eight months on removal charges for misdemeanors committed long ago and is now facing indefinite detention, an individualized hearing on the necessity of his detention is constitutionally required.").

Respondents ask this Court to disregard the eight months that Fortune has spent in detention, arguing that the length of her detention was prolonged by her investigation of her derivative citizenship claim and her planned applications for relief from removal. *See* Resp. Mem. at 25–30. Adopting such reasoning would penalize Fortune for defending herself by raising and investigating non-frivolous claims. This argument also belies the reality of the difficulties and inefficiencies present when pursuing such claims while detained. In Fortune's case, for example, verifying the identity of her father through DNA testing, as suggested by Judge Farber, took time. Pet. Reply at 7. Fortune had to contact Denis Fortune, who lives in Florida, arrange for her counsel to pay for the DNA testing as Fortune could not afford it, and coordinate with the DNA testing company and HCCC to conduct the test, a process which required several attempts due to a lice outbreak at the detention facility, and the need to obtain

ICE's authorization for the company to perform the test at HCCC. *Id.* at 8.

Fortune's mandatory detention without a bond hearing violates due process in light of her particular circumstances.[2] Accordingly, Fortune's request for an individualized bond hearing is GRANTED.

### B. Procedural Requirements for Bond Hearing

Fortune argues that she is entitled to a bond hearing where Respondents bear the burden of proof of demonstrating "by clear and convincing evidence," that she is a flight risk or danger to the community. Pet. Reply at 12–13 (quoting *Joseph v. Decker*, 18 Civ. 2640, 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018). Respondents contend that "the Constitution does not require the government to bear the burden of proving that an alien is a flight risk or a danger, much less by clear and convincing evidence, especially for aliens detained under § 1226(c)." Resp. Mem. at 32.

The Fifth Amendment's Due Process Clause forbids the government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court has stressed that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

In *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018), the Second Circuit held that an individualized bond hearing pursuant to § 1226(c) required that "the government establish[ ] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." The Supreme Court

---

[2] Having decided Petitioner's request based on her as-applied challenge, the Court need not reach Petitioner's second argument that due process requires that all noncitizens detained under § 1226(c) receive an individualized bond hearing when their detention exceeds six months. *See* Pet. Reply at 9.

vacated *Lora* in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), after concluding that the Ninth Circuit case *Lora* relied on, erred in applying the canon of constitutional avoidance to § 1226(c). *Id.* at 846. In *Jennings*, the Supreme Court held "that § 1226 itself does not require the government to carry the clear and convincing evidence burden. . . . However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)." *Cabral v. Decker*, 331 F. Supp. 3d 255, 266 n.6 (S.D.N.Y. 2018) (citing *Jennings*, 138 S. Ct. at 847, 851).

Courts in this Circuit have concluded that due process requires that when unreviewed detention has become unreasonable, Respondents must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainee's fundamental liberty interests. *See, e.g.*, *Constant v. Barr*, No. 19 Civ. 182, 2019 WL 4254078, at *8 (W.D.N.Y. Sept. 9, 2019) ("It is well established within this Circuit that when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings.") (collecting cases); *Hernandez v. Decker*, No. 18 Civ. 5026, 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018) ("[T]he Court concludes, pursuant to *Lora*, that imposing a clear and convincing standard would be most consistent with due process.").

Respondents argue that placing the burden on the government in a § 1226(c) case, would create a "pervers[e]" result where "those aliens Congress has determined are entitled to bond hearings," under § 1226(a), "will have a more difficult task of obtaining release than those aliens for whom Congress has required mandatory detention." Resp. Mem. at 33. No such result would occur, however, because courts in this district have concluded that placing the burden on

10

an alien at a § 1226(a) bond hearing also violates due process. *See Velasco Lopez v. Decker*, No. 19 Civ. 2912, 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("While *Lora* is no longer binding authority, every court to have considered the constitutional issue presented in this case has agreed with [its] persuasive logic – under the Due Process Clause of the Fifth Amendment, it is the [g]overnment's burden to justify the detention of an immigrant at a bond hearing under § 1226(a).") *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019).

Accordingly, having found the length of Fortune's detention pursuant to § 1226(c) to be unreasonable, Respondents must provide Fortune with a bond hearing where Respondents bear the burden of proof, by clear and convincing evidence.

## CONCLUSION

For the reasons stated above, Fortune's petition is GRANTED. By **November 27, 2019**, Respondents shall cause Fortune to appear before an immigration judge for an individualized bond hearing. At that hearing, Respondents shall bear the burden of demonstrating, by clear and convincing evidence, that she is a danger to the community or a flight risk. Should Respondents fail to afford Fortune a bond hearing by **November 27, 2019**, Respondents are ORDERED to immediately release her.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 20, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge